**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
    :
              Plaintiff,    :
    :
        - against -    :      Index No. 09 CV 5680 (LLS)
    :
    :
COHMAD SECURITIES CORPORATION,    :
MAURICE J. COHN, MARCIA B. COHN, and    :
ROBERT M. JAFFE,    :
    :
           Defendants.    :
------------------------------------------------------------------------x


# DEFENDANT ROBERT M. JAFFE'S
## MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
## DISMISS COUNTS ONE THROUGH FOUR OF THE COMPLAINT

Stanley S. Arkin (# 1373)
Howard J. Kaplan (# 4492)
Peter B. Pope (# 4626)
David M. Pohl (# 8609)
ARKIN KAPLAN RICE LLP
590 Madison Avenue
New York, NY  10022

*Attorneys for Defendant Robert M. Jaffe*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ (ii)

PRELIMINARY STATEMENT ........................................................................................... 1

THE SEC'S ALLEGATIONS ............................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.      THE SEC HAS FAILED TO PLEAD A "SCHEME LIABILITY" CLAIM .................... 7

        A.      The SEC Has Failed To Plead A Deceptive Act ...................................... 7

        B.      The SEC Has Failed To Plead Facts From Which It Can Be Inferred
                That Jaffe Knew Of Madoff's Ponzi Scheme ........................................ 10

        C.      The SEC Has Failed To Plead That Jaffe's Conduct Was "In Connection
                With" the Purchase Or Sale of Securities ............................................. 14

II.     THE SEC HAS FAILED TO PLEAD AN "OMISSIONS" CLAIM .............................. 16

        A.      Jaffe Owed No Duty To Disclose And Thus Cannot Be Held Liable Under
                An "Omissions" Theory ....................................................................... 17

        B.      The Alleged Omissions Are Not Material As A Matter Of Law ......................... 18

III.    THE COMPLAINT FAILS TO PLEAD AN AIDING AND ABETTING
        VIOLATION ......................................................................................................... 20

        A.      The Complaint Fails To Adequately Plead That Jaffe Acted With
                Actual Knowledge Of Madoff's Ponzi Scheme .................................... 20

        B.      As A Matter of Law, Jaffe Did Not "Substantially Assist" Madoff's
                Ponzi Scheme ...................................................................................... 23

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC*,
   446 U.S. 680 (1980)........................................................................................ 10

*Acito v. IMCERA Group*,
   47 F.3d 47 (2d Cir. 1995)............................................................................... 10

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983)......................................................................... 20, 23

*Ashcroft v. Iqbal*,
   --- U.S. ---, 129 S.Ct.1937 (2009)........................................................... passim

*Basic, Inc. v. Levinson*,
   485 U.S. 224, 231-32 (1988) ......................................................................... 19

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
   754 F.2d 57 (2d Cir. 1985)............................................................................. 23

*Briarwood Investments Inc., v. Care Investment Trust Inc.*,
   2009 U.S. Dist. LEXIS 18963 (S.D.N.Y. March 4, 2009) ...................... 12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)........................................................................................ 21

*Chiarella v. United States*,
   445 U.S. 222 (1980)................................................................................. 17, 18

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)........................................................................... 11

*Conder v. Union Planters Bank, N.A.*,
   2003 U.S. Dist. LEXIS 22215 (S.D. Ind. Sept. 26, 2003),
   *aff'd* 384 F.3d 397 (7th Cir. 2004) ............................................................ 23

*DeRobbio v. Harvest Cmtys. of Sioux City*, Inc.,
   2002 U.S. Dist. LEXIS 26706 (D.N.J. Oct. 30, 2002)........................... 20

*Doe v. British Univs. N. Am. Club*,
   788 F. Supp. 1286 (D. Conn. 1992)............................................................. 24

*Egervary v. Young*,
   366 F.3d 238 (3d Cir. 2004)........................................................................... 24

*Engel v. Sexton,*
  2009 U.S. Dist. LEXIS 12778 (E.D. La. Feb. 11, 2009) .................................................... 13

*Falkowski v. Imation Corp.,*
  309 F.3d 1123 (9th Cir. 2002) ...................................................................................... 15

*French v. First Union Sec.,* Inc.,
  209 F. Supp. 2d 818 (M.D. Tenn. 2002) ...................................................................... 17

*Ganino v. Citizens Util. Co.,*
  228 F.3d 154.8 (2d Cir. 2000) ...................................................................................... 12

*Harrison v. Rubenstein,*
  2007 U.S. Dist. LEXIS 13118 (S.D.N.Y. Feb. 22, 2007) ............................................... 8

*In re Blech Sec. Litig.,*
  928 F. Supp. 1279 (S.D.N.Y. 1996) ............................................................................... 8

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) ...................................................................................... 13

*In re LaBranche Sec. Litig.,*
  405 F. Supp. 2d 333 (S.D.N.Y. 2005) .......................................................................... 11

*In re Parmalat Sec. Litig.,*
  376 F. Supp. 2d 472 (S.D.N.Y. 2005) ........................................................................... 8

*In re Refco Capital Mkts.,*
  2007 U.S. Dist. LEXIS 68082 (S.D.N.Y. Sept. 13, 2007) ................................... passim

*In Re Time Warner, Inc. Sec. Litig.,*
  9 F.3d 259 (2d Cir. 1993) ...................................................................................... 17, 18

*Kavanaugh v. Nussbaum,*
  71 N.Y.2d 535 (1988) .................................................................................................. 24

*LaSala v. Bank of Cyprus Public Co. Ltd.,*
  510 F. Supp. 2d 246 (S.D.N.Y. 2007) .......................................................................... 15

*Lerner v. Fleet Bank, N.A.,*
  459 F.3d 273 (2d Cir. 2006) ........................................................................................ 22

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
  547 U.S. 71 (2006) ...................................................................................................... 16

*Norman v. Solomon Smith Barney,*
  350 F. Supp. 2d 382 (S.D.N.Y. 2004) .......................................................................... 16

*O'Brien Nat'l Prop. Analyst Partners*,
　936 F.2d 674 (2d Cir. 1991).......................................................................... 5, 25

*Ranco Mgmt. Corp. v. DG Investment Bank Ltd.,*
　17 F.3d 883 (6th Cir. 1994) ............................................................................ 18

*Rudolph v. UTStarcom*,
　560 F. Supp. 2d 880 (N.D. Ca. 2008) ............................................................ 13

*Ryan v. Hunton & Williams,*
　2000 Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000)...................................... 24

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
　1998 U.S. Dist. LEXIS 5903 (S.D.N.Y. Apr. 27, 1998)................................... 9

*SEC v. Cedric Kushner Promotions*, Inc.,
　417 F. Supp. 2d 326 (S.D.N.Y. 2006)....................................................... 21, 23

*SEC v. Collins & Aikman Corp*.,
　524 F. Supp. 2d 477 (S.D.N.Y. 2007)............................................................ 15

*SEC v. Dorozhko*, 2009 U.S. App. LEXIS 16057 (2d Cir. July 22, 2009) .................................... 7

*SEC v. Espuelas*,
　579 F. Supp. 2d 461 (S.D.N.Y. 2008)................................................ 10, 20, 22, 23

*SEC v. KPMG LLP*,
　412 F. Supp. 2d 349 (S.D.N.Y. 2006)............................................................ 22

*SEC v. Lucent Techs., Inc.*,
　610 F. Supp. 2d 342 (D.N.J. 2009) .................................................................. 7

*SEC v. Monarch Funding Corp.*,
　192 F.3d 295 (2d Cir. 1999).............................................................. 7, 15, 17

*SEC v. Pasternak*,
　561 F. Supp. 2d 459 (D.N.J. 2008) ................................................................ 22

*SEC v. Save the World Air, Inc*.,
　2005 U.S. Dist. LEXIS 28313 (S.D.N.Y. Nov. 15, 2005) ............................... 15

*SEC v. Stanard*,
　2009 U.S. Dist. LEXIS 6068 (S.D.N.Y. Jan. 27, 2009)................................... 22

*SEC v. Zanford*,
　533 U.S. 813, 821 (2002)................................................................................ 15

*South Cherry St., LLC v. Hennessee Group LLC*,
　2009 U.S. App. LEXIS 15467 (2d Cir. July 14, 2009).............................. 10, 14

*Superintendent of Ins. v. Bankers Life & Cas. Co.*,
   300 F. Supp. 1083 (S.D.N.Y. 1969)......................................................... 15

*Stanton v. Rich Baker Berman & Co., P.A.*,
   876 F. Supp. 1373, 1388 (D.N.J. 1995) ................................................. 18

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)................................................................................. 7

*Strigliabotti v. Franklin Resources*,
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) ............................................... 16

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group*,
   2009 U.S. Dist. LEXIS 31832 (D. Ariz. March 31, 2009) ..................... 13

*United States v. Chestman*,
   947 F.2d 551 (2d Cir. 1991)................................................................... 18

*United States v. Finnerty*,
   533 F.3d 143 (2d Cir. 2008)............................................................. 7, 10

*United States v. Skelly*,
   442 F.3d 94 (2d Cir. 2006)............................................................... 17, 20

*United States. v. Naftalin*,
   441 U.S. 768 (1979) ............................................................................... 15

*WestRM-West Risk Mkts., Ltd. v. XL Reinsurance Am., Inc.*,
   2006 U.S. Dist. LEXIS 48769 (S.D.N.Y. July 19, 2006) ...................... 23

*Zahrey v. City of New York*,
   2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. April 14, 2009) ..................... 24

*Zerman v. Melton*,
   1983 U.S. Dist. LEXIS 17809 (S.D.N.Y. April 14, 1983) ..................... 13

## Other Authorities

1 Bromberg & Lowenfels on Securities Fraud, § 2:48 (2d ed. 2009).......................... 15

15 U.S.C. § 78t(e) ................................................................................ 21, 23

4 Bromberg & Lowenfels on Securities Fraud, § 7:316 (2d ed. 2009)....................... 22

Fed. R. Civ. P. 8(a)(2) .............................................................................. 5

Fed. R. Civ. P. 9(b) ................................................................................... 5

Restatement (Second) of Torts § 440........................................................ 24

Defendant Robert M. Jaffe respectfully moves under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of claims One, Two, Three, and Four in the above-captioned Complaint filed by the Securities and Exchange Commission ("SEC").

## PRELIMINARY STATEMENT

While salaciously branding Jaffe a henchman of Bernie Madoff (he certainly was not), the Complaint here is a textbook example of failure to state a claim. It does not meet the pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure or, indeed, even the notice requirements of Rule 8(b) and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct.1937, 1949 (2009).

The SEC's complaint fails at a fraud pleading's most essential function. It does not describe who Jaffe is alleged to have defrauded – or when or where or why or how. It does not describe a deceptive act, it does not describe a false statement, it does not describe a meeting or telephone call at which a material omission was made, it does not state that Jaffe was a fiduciary, and it does not describe anyone who regarded Jaffe's statements as either misleading or material.

Given the widespread criticism of the agency, the SEC should be particularly rigorous in building its cases. Unhappily, this complaint reflects a hasty and legally insufficient effort. What the Commission has done here to Robert Jaffe is simply unfair. The agency has called him a cheat, a knowing participant in the largest Ponzi scheme in history. Yet, it has failed to back up these charges with factual allegations. And it has failed to take account of the undisputed fact that Jaffe himself is a victim of Madoff's fraud, having lost millions of dollars of his own and his family's money when Madoff's scheme came to light. The Complaint is an unfair effort to tar Jaffe with conclusory allegations of "fraud."

In determining this motion, the law requires this Court to disregard the SEC's conclusions and labels, and to examine only the facts it has actually alleged. They are scant, they are vague, and they are legally insufficient. The Complaint must be dismissed.

<u>**THE SEC'S ALLEGATIONS**</u>

The SEC pleads that Bernard Madoff, through his firm Bernard L. Madoff Investment Securities LLC (together, "BMIS" or "Madoff"), ran a multi-billion dollar Ponzi scheme that dated back to at least 1991. Complaint, ¶ 18.[1] The Complaint alleges that, for two decades, Madoff deceived investors by cultivating an "aura of success and secrecy," by "projecting" that he was "highly successful" and did not need to "solicit" investments, and by playing "hard to get" and "arbitrarily refusing prospective investors." ¶ 23. Those who nonetheless obtained Madoff accounts were rewarded with annual returns of 12 to 18 percent. ¶ 60. Together, Madoff's deceptions were so effective that, according to the SEC, numerous prospective investors "angled for ways to get in." ¶ 24.

The SEC contends that Robert Jaffe "knowingly or recklessly" participated in the Ponzi scheme. ¶ 1. It pleads the following facts in support of that legal conclusion:

The Complaint alleges that, over a 20-year period, ¶ 20, "Cohmad representatives" (a term that is *not* defined to include Jaffe) "offhandedly" mentioned that they were "affiliated" with Madoff and "projected" themselves as becoming wealthy through Madoff. ¶ 26. According to the SEC, prospective investors approached the Cohmad representatives and "asked" if the representatives "could make an introduction to Madoff so they could invest with BMIS." ¶ 26. In response, Cohmad representatives are alleged to have "agree[d] to try to put in a good word with Madoff and see if they could get the investors in." ¶ 26. Apparently by accommodating

---

[1] All subsequent references to numbered paragraphs refer to paragraphs in the Complaint.

those who solicited him for introductions, Jaffe is alleged to have "found" over 150 people for

Madoff between 1989 and 2008. ¶ 59. The Complaint attributes no statements to Jaffe, much

less identify where, when, or to whom they were allegedly made.

According to the SEC, Madoff "directly" compensated Jaffe for making introductions by

managing a stock account for him.[2] ¶ 60. The SEC contends that Jaffe's compensation was in

the form of "outsized" returns in his stock account, namely that (a) in unspecified years, Jaffe's

returns exceeded what other investors were obtaining,[3] and (b) his account *once* obtained an

annual return as high as 46%.[4] ¶ 60.

According to the SEC, on "specific days" not identified in the Complaint, Jaffe requested

that "long term gains" be realized in this account. ¶ 62. Jaffe did not tell Madoff which of the

stocks in his portfolio to sell to generate gains in the desired amounts. ¶ 62.

The SEC does not allege it is improper to realize long-term gains in a brokerage account.

Nor does it allege stocks were lacking in Jaffe's portfolio sufficient to permit long-term gains of

this size or type to be taken.[5] According to the Complaint, Jaffe's taking of long-term profits

---

[2]    The SEC alleges that Jaffe withdrew at least $150 million from this account. As necessary,
in a different procedural posture we will demonstrate that the SEC is simply wrong about this, by
many multiples. But for the more limited purpose of a motion to dismiss, the SEC pleads neither
how much money Jaffe invested in the account, nor how much the stocks in his portfolio
appreciated over time.

[3]    Although we must assume this allegation to be true for the purposes of this motion, it is not,
and the SEC knows it. Specifically, records in the SEC's possession show periods in which
Jaffe's account not only underperformed profits that the SEC pleads other investors received, but
lost significant value in absolute terms. For example, in the first six months of 2008, Jaffe's
account plunged from over $35 million to less than $5 million.

[4]    The Court may take judicial notice that this 46% so-called "outsized" return actually
underperformed NASDAQ annual returns during three years in the relevant period: 1991
(56.84%), 1999 (85.59%), and 2003 (50.01%). *See* http://www.1stock1.com/1stock1_140.htm;
http://www.google.com/finance?q=INDEXNASDAQ:.IXIC.

[5]    Indeed, the SEC did not make such an allegation because it could not; it has records in its
possession that show that Jaffe's portfolio contained positions in stocks taken many years ago

3

was a regular practice, that is, Jaffe "frequently" requested that long-term gains be realized in his account. ¶ 62. In short, the Complaint alleges Jaffe routinely took long-term gains by selling stocks that appeared on his statements in sufficient quantities to support those gains.

The SEC nonetheless contends that Jaffe knew these sales were "fictitious." ¶ 63. It bases this conclusion on an allegation that Madoff began moving out of stock positions before Jaffe notified him of the total amount of gains Jaffe wished to realize during a given period. ¶ 62. In sum, the SEC advances an inference that, had Jaffe examined his account statement and confirmation slips, he would have seen that Madoff began selling stocks "days, weeks, or even months" before Jaffe gave him the total amount in gains he wished to realize for that period. ¶ 62. The SEC does not allege why it is inappropriate (much less a badge of fraud) for a broker of a discretionary account to move out of positions in advance of a client's "frequent" requests to realize gains.

The SEC pleads that certain of the "backdated" trade confirmations were mailed late to Jaffe. ¶ 62. The Complaint does not plead how often this happened over the 20 years at issue; although all of the records are in the possession of the SEC, the Complaint pleads no dates and no frequency. Nor does it allege that the "fictitious" sales recorded on the late-mailed confirmations took place at a high water mark for stock prices.

The SEC finally alleges that Jaffe "did not disclose this ongoing red flag to investors," and that he invoked the Fifth Amendment when questioned about his lack of disclosure. ¶ 63.

In sum, the SEC alleges that Jaffe should have known he was helping to perpetrate the biggest Ponzi scheme in history because (a) he once realized an annual rate of return of 46%, (b)

---

that had dramatically appreciated. For example, Madoff built up a position in Microsoft in Jaffe's account in 1990 and 1991. By 1998, a stockholder would make a profit of 2,964% on that position.

he should have noticed that his broker of 20 years began at some point to anticipate his regular requests for long-term gains, and (c) in 20 years, an unspecified number of sale confirmations were mailed to him late. This does not make out fraud.

## ARGUMENT

For the Complaint to survive a motion to dismiss, it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A complaint fails if it "tenders naked assertions devoid of further factual enhancement." *Id.* (quotes and brackets omitted). It must be plausible on its face, that is, it must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The pleading standards in a fraud case, such as this, are even more demanding: "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Among the purposes of Rule 9(b) are "to provide a defendant with fair notice of a plaintiff's claim" and "to safeguard a defendant's reputation from improvident charges of wrongdoing." *O'Brien Nat'l Prop. Analyst Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

The Complaint charges Jaffe with "knowingly or recklessly participating in Bernard L. Madoff's Ponzi scheme." ¶ 1. Specifically, the SEC charges Jaffe with three types of securities fraud:

1. *"Scheme Liability" (fraud by "deceptive act") as a primary actor in the Ponzi scheme.* Jaffe is alleged to have participated as a principal in the Ponzi scheme in that he "employed devices, schemes and artifices to defraud" in violation of Section 17(a)(1) of the Exchange Act and Rule 10b-5(a) (asserted in claims One and Three), and "engaged in transactions,

5

practices or courses of business which have operated as a fraud and deceit upon investors" in violation of Section 17(a)(3) of the Exchange Act and Rule 10b-5(c) (asserted in claims Two and Three).

2.   *"Omissions fraud" as a primary actor in the Ponzi scheme.*  Jaffe is alleged to have omitted to state material facts to prospective Madoff investors in violation of Section 17(a)(2) of the Exchange Act and Rule 10b-5(b) (asserted in claims Two and Three).

3.   *Aiding and Abetting Madoff in his Ponzi scheme.*  Jaffe is alleged to have knowingly provided "substantial assistance" to Madoff in violation of Section 20(e) of the Exchange Act and Section 209(d) of the Investment Advisors Act (asserted in claims Three and Four).

Under the standards of both Rule 8 and Rule 9(b), this complaint fails.

First, as to the "scheme liability" claims, the SEC has failed to plead: (a) facts showing that Jaffe committed "a deceptive act," (b) facts from which Jaffe's allegedly fraudulent intent could fairly be inferred, and (c) that Jaffe's conduct was "in connection with" the purchase or sale of securities.

Second, as to the "omissions" claims, the SEC has failed to plead: (a) that Jaffe owed a fiduciary duty to any prospective investor he allegedly introduced to Madoff, (b) the materiality of alleged omissions, (c) facts from which Jaffe's allegedly fraudulent intent could fairly be inferred, and (d) that Jaffe's conduct was "in connection with" the purchase or sale of securities.

Third, as to the aiding and abetting claims, the SEC has failed to plead: (a) facts from which Jaffe's "actual knowledge" may plausibly be inferred, and (b) that Jaffe's conduct "proximately caused" any harm.

# I. THE SEC HAS FAILED TO PLEAD A "SCHEME LIABILITY" CLAIM

The SEC's claims under Rules 10b-5(a) and (c) and Sections 17(a)(1) and (3) allege so-called "scheme liability." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc*., 552 U.S. 148, 128 S. Ct. 761, 770 (2008). The claims must be dismissed because the SEC has failed to plead that (1) Jaffe committed a "deceptive act," (2) Jaffe possessed the requisite intent to deceive, and (3) Jaffe's allegedly "fraudulent" introductions were "in connection with" stock transactions that happened years and decades after the introductions.[6]

## A. The SEC Has Failed To Plead A Deceptive Act

The Second Circuit has repeatedly held that "the conduct prohibited by Section 10(b) and Rule 10b-5 'irreducibly entails some act that gives the victim a false impression.'" *SEC v. Dorozhko*, 2009 U.S. App. LEXIS 16057, *23 (2d Cir. July 22, 2009), quoting *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008). A "scheme liability" claim must allege "conduct that is manipulative or deceptive." *In re Refco Capital Mkts*., 2007 U.S. Dist. LEXIS 68082,*22 (S.D.N.Y. Sept. 13, 2007) (quotation omitted); *see also Finnerty*, 533 F.3d at 148-49; *SEC v. Lucent Techs., Inc*., 610 F. Supp. 2d 342, 359-61 (D.N.J. 2009) (dismissing scheme liability claim for lack of an "inherently deceptive" act).

Furthermore, under Rule 9(b), the SEC "must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Refco*, 2007 U.S. Dist. LEXIS 68082 at *23 (quotation omitted); *In re Parmalat Sec. Litig*., 376 F. Supp. 2d 472, 505 (S.D.N.Y. 2005).

---

[6] Rules 10b-5(a) and (c) and Sections 17(a)(1) and (3) require "[e]ssentially the same elements . . . , though no showing of scienter is required" under Section 17(a)(1)(3). *See SEC. v. Monarch Funding Corp*., 192 F.3d 295, 308 (2d Cir. 1999). Therefore, that the SEC has failed to plead any "deceptive act" attributable to Jaffe warrants dismissal of its claims under Rules 10b-5(a) and (c) as well as Sections 17(a)(1) and (3).

None of this was pleaded here. The Complaint does not name a single investor who believes Jaffe misled him, where they spoke, why they spoke, when they spoke, or what was said or done. *See Refco*, 2007 U.S. Dist. LEXIS 68082 at *25 (scheme liability claims dismissed where complaint "fail[ed] to explain how defendants created a false impression . . . [or] how plaintiffs believe they were deceived"). Not only does the Complaint violate Rule 9(b), it is also an example of what the Supreme Court just forbade under Rule 8: it "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949.

Nor do the (non-particular) allegations involving "the Cohmad representatives" suffice to make out a claim against Jaffe. First, the Complaint does not allege that Jaffe is a "Cohmad representative." But even if it did, the allegations would still be insufficient: "When fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant." *Harrison v. Rubenstein*, 2007 U.S. Dist. LEXIS 13118, *35 (S.D.N.Y. Feb. 22, 2007) (quotes and alterations omitted). The requirements of Rule 9(b) are not "satisfied by a complaint in which defendants are clumped together in vague allegations." *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996). Indeed,

> Each defendant is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which it individually stands charged. To this end, a complaint may not rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the fraud.

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 1998 U.S. Dist. LEXIS 5903, *12 (S.D.N.Y. Apr. 27, 1998) (quotations omitted). The Complaint thus fails on this ground as well.

Moreover, this is not merely a case in which the Complaint fails because of silence as to Jaffe's conduct. The Complaint affirmatively lays the operative "deceptive acts" at Madoff's feet, alleging that Madoff (not Jaffe) "cultivated an aura of success and secrecy," ¶ 23; Madoff (not Jaffe) "played hard to get," *id*.; Madoff (not Jaffe) refused investors for "whimsical or

snobbish reasons," *id*.; Madoff (not Jaffe) created "an air of prestige and exclusivity," ¶ 24; and, of course, Madoff (not Jaffe) paid his investors 12 to 18% returns on their investments each year, ¶ 60.

According to the Complaint, it was these deceptive acts *by Madoff* that caused investors to seek him out, to "angle" to invest with him. ¶ 24. Only with their understandings thus formed did desirous investors even approach the "Cohmad representatives" to plead for "an introduction to Madoff." ¶ 26. And only after being solicited by investors would the Cohmad representatives "agree to try to put in a good word with Madoff and see if they could get the investors in." ¶ 26. In other words, the SEC has alleged that Madoff – not Jaffe (assuming the unpleaded fact that he is a "Cohmad representative") – was the source of the investors' understanding, and that they formed this understanding *before* approaching him. There is not a single interaction that Jaffe had with an identified investor that is alleged to be the source of that investor's incorrect understanding.

As a matter of law, this exculpates Jaffe of any charges that he committed a primary violation of the securities laws. "[T]he most basic element of all fraud claims is that the victim must be deceived *by the perpetrator's* words or actions." *Refco*, 2007 U.S. Dist. LEXIS 68082 at *22 (emphasis added). "[U]nless [the investors'] understanding was based on a statement or conduct by [the defendant], he did not commit a primary violation of § 10(b)." *Finnerty,* 533 F.3d. at 150. Under the SEC's own theory, the investors' understanding was "based on" Madoff's conduct, and thus any claim that Jaffe committed a primary violation fails.

Because the SEC has failed to plead (with particularity or otherwise) that Jaffe committed any deceptive act, its scheme liability claims under Rules 10b-5(a) and (c) and Sections 17(a)(1) and (3) (asserted in claims One, Two and Three) should be dismissed.

9

**B.      The SEC Has Failed To Plead Facts From Which It
Can Be Inferred That Jaffe Knew Of Madoff's Ponzi Scheme**

The "scheme liability" counts under Section 17(a)(1) and Rules 10b-5(a) and (c)

additionally require a showing that Jaffe acted with fraudulent intent.[7]  *Refco*, 2007 U.S. Dist.

LEXIS 68082 at *22 n.5.  These counts fail because the Complaint is devoid of factual

allegations establishing the requisite "strong inference of fraudulent intent."  *Acito v. IMCERA

Group*, 47 F.3d 47, 52 (2d Cir. 1995); *SEC v. Espuelas*, 579 F. Supp. 2d 461, 474 (S.D.N.Y.

2008) ("allegations consistent with innocent conduct are never sufficient for a strong inference").

The Complaint similarly fails to allege "reckless disregard for the truth," which means "a state of

mind *approximating actual intent*, and *not merely a heightened form of negligence*." *South

Cherry St., LLC v. Hennessee Group LLC*, 2009 U.S. App. LEXIS 15467, *28-29 (2d Cir. July

14, 2009) (quotation omitted, emphasis in original).

In all, the SEC rests its accusations of Jaffe's intent to participate in a massive Ponzi

scheme on five scant "facts":

- At least once, Jaffe obtained an annual return in a brokerage account

    managed by Madoff as high as 46%.  ¶ 60.  The SEC has characterized

    these returns as "outsized."  ¶ 60.

- Investors who approached Jaffe for introductions to Madoff received

    steady annual returns of "only" 12-18%.  ¶ 60.

- Madoff sometimes began selling stocks before Jaffe made one of his

    "frequent" requests to realize long-term gains in his account.  ¶ 60.

---

[7]     Section 17(a)(3) does not require a showing of intent, but of negligence. *Aaron v. SEC*, 446
U.S. 680, 697 (1980).  A  negligence theory here also fails under Rule 8(a) and *Iqbal*, for the
simple reason that one cannot tell from the Complaint what Jaffe did that was negligent.

- On unspecified occasions, Jaffe received confirmations reflecting sales of stocks "days, weeks or even months" before Jaffe specified the final amount of long-term gains he wished to realize. ¶ 62. The SEC concludes that this put Jaffe on notice that Madoff was "engaging in fictitious trading" in Jaffe's account." ¶ 63.

- Jaffe withdrew $150 million from his account over several decades. ¶ 60. The Complaint alleges neither how much money Jaffe deposited into the brokerage account nor how much the stocks in his portfolio appreciated during this time.[8]

These allegations fail to establish that Jaffe knew Madoff was engaging in a Ponzi scheme, or that Jaffe had any other fraudulent or reckless intent.

First, as a matter of law, even "unprecedented" high returns do not constitute a red flag. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269-70 (2d Cir. 1996). In *Chill*, record profits at a subsidiary did not constitute a "red flag" indicating even recklessness. *Id.; see also In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 359-62 (S.D.N.Y. 2005) (defendants' knowledge of large revenues from allegedly improper transactions insufficient to raise a red flag). But in any event, as a factual matter, a one-time return of 46% during the period at issue is not "outsized." The Court may take judicial notice that the NASDAQ rose 56.84% in 1991, 85.59% in 1999, and 50.01% in 2003.[9] In other words, during the period alleged in the complaint, a NASDAQ index

---

[8]   As mentioned in footnote 2, above, we will at the appropriate time demonstrate that this $150 million figure is grossly inaccurate.

[9]   In a motion to dismiss the Court may take judicial notice of facts such as stock prices. *See Ganino v. Citizens Util. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000); *Briarwood Investments Inc., v. Care Investment Trust Inc.*, 2009 U.S. Dist. LEXIS 18963 at *12 n.2 (S.D.N.Y. March 4, 2009) (Stanton, J.). For percentages, *see* http://www.1stock1.com/1stock1_140.htm; http://www.google.com/finance?q=INDEXNASDAQ:.IXIC.

fund would have repeatedly beaten the 46% high-return mark that the SEC alleges Jaffe *once* achieved in his Madoff account. This demonstrates why conclusory allegations (such as that Jaffe's returns were "outsized") are "not entitled to the assumption of the truth." *Iqbal*, 129 S.Ct. at 1950.

Second, the Complaint fails to plead that Madoff lacked authority to make trades in Jaffe's account. "Authorization, of course, is not required for all brokerages making trades on behalf of a client; some brokerages hold assets on a discretionary basis, meaning they are permitted to make trades without the client's specific authorization." *Refco*, 2007 U.S. Dist. LEXIS 68082 at *26. Here, as in *Refco*, "[t]he complaint does not explain whether the accounts were discretionary." *Id.* (Indeed, here they were discretionary, as the SEC knows full well.) Nor does the SEC allege (nor could it) that Jaffe's account lacked stocks of sufficient value to realize the long-term gains he "frequently" requested. Thus, receiving trade confirmations that "antedated" some of his regular requests simply does not support an inference that Jaffe knew that trades in his account were "fictitious." To the contrary, under *Refco*, absent a pleading that the broker lacked authority to make the trades (there is no such allegation here), they are lawful. Indeed, "[d]iscretionary authority allows your broker to make investment decisions based on his other determination of what will best meet your investment objectives. *Your broker will then do so without consulting you about the price or type of security or when to buy or sell.*"[10]

Third, there is no allegation here that Madoff was late in mailing confirmations with any kind of regularity, that is, frequently enough over two decades for an investor to notice. And, in any event, as a matter of law, even seemingly backdated documents do not indicate fraud rather than a bookkeeping error. For example, in *Zerman v. Melton*, 1983 U.S. Dist. LEXIS 17809, *7-

---

[10]  http://www.oag.state.ny.us/bureaus/investor_protection/making_an_investment_a.html (emphasis added).

8 (S.D.N.Y. April 14, 1983), the Court found that the plaintiff did not allege a fraud when the errors at issue (which, at least, were specifically pleaded) included (1) a sale listed on a brokerage statement on the wrong date, (2) a stock sale price that was well outside the day's price range, and (3) a stock position listed on a statement under a fictitious name. The securities laws do not reach instances in which there is "no more than . . . detection of a few negligently made errors in . . . statements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). So here, even if Jaffe actually saw the statements at issue (it is not alleged that he did), the entries "could equally support the inference that [the documents] had been backdated through an innocent bookkeeping error." *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 890 (N.D. Ca. 2008). Indeed, the Complaint lacks any allegation that the irregularities worked exclusively in Jaffe's favor (for example all being at the highest price for the stock during the period at issue), unlike the complaints in *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group*, 2009 U.S. Dist. LEXIS 31832, *75-77 (D. Ariz. March 31, 2009) (backdated options repeatedly at or near low of the month, quarter, or year) and *Engel v. Sexton*, 2009 U.S. Dist. LEXIS 12778, *38 (E.D. La. Feb. 11, 2009) (option grants "were *all* in favor" of defendants). And, once again, specificity is entirely lacking; not a single date is pleaded.

Finally, as to the allegation that Jaffe withdrew $150 million, any figure, large or small, is meaningless unless two other facts are pleaded, which they are not: (a) how much money was initially invested; and (b) how much that investment appreciated over time. No inference of evil motive can be drawn from a number that is entirely untethered to other facts that render the number suspicious. "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S.Ct. at 1950.

Indeed, just last month, the Second Circuit upheld the dismissal of a strikingly similar complaint against a defendant, the Hennessee Group, which introduced the plaintiff to a hedge fund (Bayou) that turned out to be running a Ponzi scheme. *See South Cherry St., LLC v. Hennessee Group LLC*, 2009 U.S. App. LEXIS 15467 (2d Cir. July 14, 2009). The plaintiff alleged that Hennessee had been reckless "in passing [Bayou] on to investors." *Id*. at *11. Even though the complaint alleged that (1) there were "unprecedented" trading profits (as opposed to merely "outsized" here) and (2) there were problems with internal controls and accounting practices, the Second Circuit found that the necessary scienter had not been pleaded. *Id*. at *37-46. Relying on well-settled case law, the court noted that "there are limits to the scope of liability for failure to adequately monitor the allegedly fraudulent behavior of others," and held that to meet the "requirement of scienter," the level of intent "must approximate an actual intent to aid in the fraud being perpetrated." *Id*. at *31 (quotes and citations omitted). As in *South Cherry Street*, no facts supporting that level of intent have been pleaded here. Just the opposite, Jaffe allegedly played a far smaller role in bringing investors to Madoff than Hennessee did in bringing them to Bayou.

In sum, the (few) well-pleaded facts in the Complaint fail to sustain the SEC's claims under Section 17(a)(1) and Rules 10b-5(a) and (c) because the SEC has failed to plead facts that raise a "strong inference" that Jaffe knew of the historic Ponzi scheme.

### C.  The SEC Has Failed To Plead That Jaffe's Conduct Was "In Connection With" the Purchase Or Sale of Securities

The federal securities laws do not forbid all manners of fraud, only those that are "in connection with the purchase or sale," Rule 10b-5, or are "in the offer or sale," Section 17(a), of

a security.[11]  The momentary conduct alleged here – an introduction to a broker – does not meet either requirement.

To make out a violation of Rule 10b-5, the proscribed conduct cannot be "tangential," *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), and must "coincide" with "the sale of securities," *SEC v. Zanford*, 533 U.S. 813, 821 (2002).  Conduct "too far removed from a securities transaction" does not satisfy the "in connection with" requirement.  *LaSala v. Bank of Cyprus Public Co. Ltd.*, 510 F. Supp. 2d 246, 273, 276 (S.D.N.Y. 2007).

Here, the SEC's theory is that if, in a single conversation, Jaffe told a supplicant that he would "try to put in a good word with Madoff," ¶ 26, then that one-time conduct would be "in connection with" every stock sale and purchase that Madoff made on behalf of that investor for the entire life of the investor's account (a time period pleaded to be up to two decades long).  But an allegedly "fraudulent" introduction today simply does not "coincide with a securities transaction" a decade hence.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).  Moreover, as the SEC has pleaded it, each investor had decided to invest with

---

[11]  Although some courts have treated the two standards as identical, others have held that Section 17(a) is narrower than 10b-5.  As one court held:

> Rule 10b-5 . . . is more expansive than section 17(a) of the 1933 Act.  It prohibits fraud or deception by either a purchaser or seller; and its operative language is 'in connection with the purchase or sale of any security' as distinguished from the phrase 'in the offer or sale of any [securities]' which appears in section 17(a) of the 1933 Act.

*Superintendent of Ins. v. Bankers Life & Cas. Co.*, 300 F. Supp. 1083, 1094 (S.D.N.Y. 1969); *id.* at 1101 n. 15; 1 Bromberg & Lowenfels on Securities Fraud, § 2:48 (2d ed. 2009); *but see, SEC v. Monarch Funding Corp.*, 192 F.3d 295, 307 (2d Cir. 1999) (dicta); *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 490 (S.D.N.Y. 2007) (dicta); *SEC v. Save the World Air, Inc.*, 2005 U.S. Dist. LEXIS 28313, *38-40 (S.D.N.Y. Nov. 15, 2005) (dicta).  The Supreme Court left the issue undecided in *United States. v. Naftalin*, 441 U.S. 768, 773 n.4 (1979) ("we are not necessarily persuaded that 'in' is narrower than 'in connection with[ . . . and] have on occasion used the terms interchangeably" (quotation omitted)).

Madoff *before* ever approaching Jaffe, further attenuating either a causal or temporal "in connection with" link.

In addition to the nexus being broken by the years, it is also broken by the nature of the alleged omission. Omissions about a broker's (that is, Madoff's) fitness have repeatedly been held not to be "in connection with" stock transactions. Thus, when a discretionary broker knowingly misled investors about how the broker's investment research was tainted by a conflict of interest, that omission was not "in connection with" the purchase or sale of stocks. *Norman v. Solomon Smith Barney*, 350 F. Supp. 2d 382, 386-88 (S.D.N.Y. 2004). Similarly, when a broker misled an investor about the fees it was receiving, that was not "in connection with" the purchase or sale of securities, because the representations related not to a transaction, but rather to an investor's choice of broker. *Strigliabotti v. Franklin Resources*, 398 F. Supp. 2d 1094, 1100-01 (N.D. Cal. 2005). Indeed, even when a brokerage firm failed to reveal that a broker had a conflict of interest in using his position to solicit investments for his own investment venture, the omissions were held to be related only to a "broker's inherent fitness to execute trades and make investment decisions on behalf of their client," and "not 'in connection with' the purchase or sale of a covered security." *French v. First Union Sec.*, Inc., 209 F. Supp. 2d 818, 827 (M.D. Tenn. 2002).

The allegations here, if true, would not establish that Jaffe's passing conduct was "in connection with" the purchase or sale of a security.

## II.     THE SEC HAS FAILED TO PLEAD AN "OMISSIONS" CLAIM

The SEC has also accused Jaffe of making material omissions to Madoff investors in violation of Rule 10b-5(b) and Section 17 (a)(2). In an "omissions" case, the SEC must allege that a defendant "(1) made . . . a material omission as to which he had a duty to speak . . . ; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch*

*Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). With respect to two of the elements – scienter and "in connection with" – the Complaint fails for the reasons that the "scheme liability" claims did.[12]

But the "omissions" claims fail for additional reasons. First, the SEC has failed to plead that Jaffe owed a fiduciary duty to those who approached him. Second, as a matter of law, the alleged omissions are not material.

### A. Jaffe Owed No Duty To Disclose And Thus Cannot Be Held Liable Under An "Omissions" Theory

There can be no violation under a "failure to disclose" theory unless: (1) the defendant "had assumed a 'fiduciary duty' to disclose such information," *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006), (2) there existed a "similar relation of trust and confidence between" Jaffe and those he allegedly introduced, *Chiarella v. United States*, 445 U.S. 222, 228 (1980), or (3) a particular "disclosure [wa]s necessary to make prior statements not misleading," *In Re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993).

The Complaint does not allege that Jaffe owed a fiduciary duty to anyone who approached him for an introduction to Madoff. Nor does it allege that Jaffe had a relationship of trust and confidence with any of them, or that a particular statement was rendered misleading by a subsequent failure to disclose. Thus, the "omissions" claims must be dismissed.

The Complaint does allege (without a single particular as to who, what, where, when or how) that people approached "Cohmad representatives" for introductions to Madoff and that they obliged. ¶ 26. Setting aside that this manner of group pleading is impermissible, "finders" – those who bring two parties together – owe fiduciary duties to neither the buyer nor the seller.[13]

---

[12] *See* Sections I (B) and (C), above.

[13] *See* p. 8, above, for a discussion of the impropriety of group pleading.

*See Ranco Mgmt. Corp. v. DG Investment Bank Ltd.*, 17 F.3d 883, 889 (6th Cir. 1994) (applying New York law). As one court has said, it is "improper to impose any fiduciary-like duty" where the defendant did not have "the power to bind or negotiate, but simply to present candidates for a potential transaction." *Stanton v. Rich Baker Berman & Co., P.A.*, 876 F. Supp. 1373, 1388 (D.N.J. 1995). Instead, as the Second Circuit has held, "[a]t the heart of the fiduciary relationship lies reliance, and de facto control and dominance." *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (citation omitted). Here, there are no allegations of "de facto control" or "dominance" but, at best, of fleeting contact in a lawful manner.

The SEC has not alleged that Jaffe owed the "anglers" a fiduciary duty or had a "relation[ship] of trust and confidence" with any of them, *Chiarella*, 445 U.S. at 228, nor has it alleged that any omitted statement was "necessary to make prior statements not misleading," *In Re Time Warner*, 9 F.3d at 268. Therefore, the Rule 10b-5(b) and Section 17(a)(2) omission claims (asserted in claims Two and Three) must be dismissed.

## B.     The Alleged Omissions Are Not Material As A Matter Of Law

The "omissions" claims should also be dismissed because the alleged omissions are not material as a matter of law. An omitted fact is material only when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quotation omitted).

The Complaint alleges two omissions:

- "Jaffe participated in hiding from investors . . . that he was part of Madoff's marketing team and responsible for bringing in over $1 billion . . . . ¶ 58; *see also* ¶ 5.

- Jaffe should have disclosed to investors that, in his own account, Madoff
  began anticipating Jaffe's "frequent" requests to realize "long term gains"
  by getting out of long-term stock positions "days, weeks or even months"
  before Jaffe gave him instructions as to precisely how much and precisely
  when he wished to make withdrawals, and that Jaffe later received in the
  mail confirmations for unspecified trades that "antedated the requests." ¶¶
  62-63.

The first alleged omission is just preposterous. The crux of the Complaint is that it was widely known, including by potential investors, that "Cohmad representatives" could introduce people to Madoff and, as a result, potential investors "angled" for help. ¶ 24. Indeed, it was so widely known, according to the SEC, that all "Cohmad representatives" had to do was "circulate[]" at country clubs to have desirous investors approach them. ¶ 26. In other words, the SEC's theory is that investors knew and were motivated by precisely what Jaffe is alleged to have omitted to tell them. This does not and cannot alter the mix of information available to those who solicited him for a Madoff introduction.[14]

The second alleged omission is likewise immaterial. It does not alter an investor's mix of information that a broker authorized to make trades in an account did so. *See Refco*, 2007 U.S. Dist. LEXIS 68082 at *26. Nor is failing to disclose occasional operational lapses in one's

---

[14] The Complaint does not allege that, among the material omissions, Jaffe failed to disclose that he had his own Madoff account. Just the opposite, it alleges that the "representatives" had projected themselves as becoming wealthy through Madoff. ¶ 26. To the extent that the SEC is trying to contend that Jaffe failed to disclose "compensation" to investors, he is not pleaded to be a "Cohmad representative." ¶ 28. But in any event, such an omission would not be material as a matter of law. As the Second Circuit has held, "[t]racing back to the common law principle of *caveat emptor*, it is a fundamental tenet of Anglo-American commercial law that neither a seller nor a middleman has an obligation to disclose his financial incentives for selling a particular commodity." *Skelly*, 442 F.3d at 97.

account (assuming *arguendo* the unpleaded fact that the lapses were frequent enough even for Jaffe to notice) a material omission.  *See Burlington Coat Factory*, 114 F.3d at 1418; *see also DeRobbio v. Harvest Cmtys. of Sioux City*, Inc., 2002 U.S. Dist. LEXIS 26706, *11 n.6 (D.N.J. Oct. 30, 2002) (failure to disclose corporate mismanagement).

In sum, even if Jaffe owed the "anglers" the requisite fiduciary duty (he did not), the alleged omissions are not material because they would not have "significantly altered" the mix of information available to Madoff investors.  For this reason alone, the "omissions" claims (asserted in claims Two and Three) should be dismissed.

## III.  THE COMPLAINT FAILS TO PLEAD AN AIDING AND ABETTING VIOLATION

To plead that Jaffe aided and abetted Madoff's Ponzi scheme, the Complaint must allege not only (1) that Madoff committed a fraud, but also (2) that Jaffe had actual "knowledge" of the fraud and (3) that he substantially assisted it.  *See Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Espuelas*, 579 F. Supp. 2d 461, 471 (S.D.N.Y. 2008).  Granted, the Complaint does succeed in pleading that Madoff committed a historic fraud, a fact of which Jaffe, also a victim, is all too aware.  But the Complaint utterly and completely fails to allege any facts showing that Jaffe "actually knew" of the fraud or "substantially assisted" it.  Therefore, the aiding and abetting claims (claims Three and Four) should be dismissed.

### A.    The Complaint Fails To Adequately Plead That Jaffe Acted With Actual Knowledge Of Madoff's Ponzi Scheme

To be liable for aiding and abetting Madoff's Ponzi scheme, Jaffe must have acted with actual knowledge.  The Complaint fails to plead facts from which actual knowledge may be inferred.

That the correct standard is "actual knowledge" is shown unequivocally by both legislative history and case law.  Following the Supreme Court's holding in *Central Bank of*

*Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177-78 (1994), that Section

10(b) did not authorize "aiding and abetting" liability, Congress passed the Private Securities

Litigation Reform Act (the "Reform Act") of 1995, granting the Commission the statutory

authority to bring such charges. *See* 15 U.S.C. § 78t(e) ("Section 20(e)"). Indeed, Section 20(e)

imposes liability on:

> any person that *knowingly* provides substantial assistance to another person in
> violation of a provision of this title, or of any rule or regulation issued under this
> title.

15 U.S.C. § 78t(e) (emphasis added).

Congress thus precluded "aiding and abetting" charges based upon recklessness. *See*

*SEC v. Cedric Kushner Promotions*, Inc., 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006) (Section

20(e) requires a showing of "knowledge of the violation by the aider and abettor." (quotation

omitted)). Repeatedly, the Southern District of New York "has rejected the SEC's arguments for

a recklessness standard under section 20(e), which contradicts not only the plain language of the

statute but also its legislative history." *SEC v. Stanard*, 2009 U.S. Dist. LEXIS 6068, *88

(S.D.N.Y. Jan. 27, 2009). Indeed, in another decision reaching the same result, the District Court

quoted the debate in Congress: "Although [the existing bill] authorizes the SEC to take action

against aiders and abettors who knowingly violate the securities laws, it effectively eliminates

the ability of the [SEC] to proceed against reckless professional assisters." *SEC v. KPMG LLP*,

412 F. Supp. 2d 349, 383 (S.D.N.Y. 2006) (brackets in original)); *Espuelas*, 579 F. Supp. 2d at

470; *SEC v. Pasternak*, 561 F. Supp. 2d 459, 501-02 (D.N.J. 2008); 4 Bromberg & Lowenfels on

Securities Fraud, § 7:316 (2d ed. 2009) (noting that Reform Act altered existing law and requires

knowledge as opposed to recklessness).

The SEC is asking the Court to take an impermissible logical leap. First is that Jaffe should have known that unspecified sales in his own account were "fictitious," a conclusion that we have elsewhere argued is unsupported by well-pleaded facts. *See* pp. 4, 12, above. From that, the SEC next asks the Court to conclude that Jaffe had "actual knowledge" of a multi-billion dollar Ponzi scheme. The Second Circuit rejected similarly flawed logic in *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). There, the court held that numerous "red flags" visible to the defendant banks were insufficient to establish a claim against them for aiding and abetting the primary perpetrator of a Ponzi scheme. Among the red flags, the banks knew that the primary violator had overdrawn his accounts, written many checks that were dishonored for insufficient funds and, on numerous occasions, transferred client funds to his personal account. *Lerner*, 459 F.3d at 294. The court held that, even though the red flags arguably put the banks on notice of "some impropriety," *id.*, the "alleged facts do not give rise to the 'strong inference,' required by [Rule] 9(b), of actual knowledge of his outright looting of client funds" via a Ponzi scheme, *id.* at 293. The allegations failed to make out an aiding and abetting claim.

Based on the allegations here, no plausible inference can be drawn that Jaffe had "actual knowledge" of a historic Ponzi scheme. The aiding and abetting claims (asserted in claims Three and Four) fail.

**B.     As A Matter of Law, Jaffe Did Not
          "Substantially Assist" Madoff's Ponzi Scheme**

Section 20(e) also requires the SEC to demonstrate that Jaffe "substantially assisted"

Madoff with his fraud.  *See* 15 U.S.C. § 78t(e); *Armstrong*, 699 F.2d at 91.  Substantial

assistance is shown only if the defendant "proximately caused the harm . . . on which the primary

liability is predicated."  *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d

Cir. 1985); *Espuelas*, 579 F. Supp. 2d at 471; *Cedric Kushner*, 417 F. Supp. 2d at 335.

"Allegations of a 'but for' causal relationship are insufficient."  *Bloor*, 754 F.2d at 63; *WestRM-

West Risk Mkts., Ltd. v. XL Reinsurance Am., Inc*., 2006 U.S. Dist. LEXIS 48769, *32 (S.D.N.Y.

July 19, 2006).

The proximate cause standard presents an insuperable barrier in this case.  In *Conder v.

Union Planters Bank, N.A,* the plaintiff, a victim of a Ponzi scheme, sued the bank at which the

Ponzi schemer maintained its bank accounts, alleging that the bank's acts of repeatedly allowing

the Ponzi schemer to deposit plaintiff's checks (intended for the purchase of securities) into the

wrong account facilitated the Ponzi scheme and proximately caused plaintiff's losses.  *See*

*Conder v. Union Planters Bank, N.A*., 2003 U.S. Dist. LEXIS 22215 (S.D. Ind. Sept. 26, 2003),

*aff'd* 384 F.3d 397 (7th Cir. 2004).  The complaint in *Conder* included specific allegations of red

flags which, the plaintiff asserted, should have given the bank reason to know its client was

operating a Ponzi scheme.  *Id*. at *11-13.  The bank moved to dismiss, asserting that no act on its

part proximately caused the plaintiff's loss; rather, the Ponzi schemer's acts did.  *Id*. at *31.  The

District Court granted the motion to dismiss, holding that the Ponzi scheme was an "intervening

and independent force[]," and "not reasonably foreseeable at the time of [the bank's] conduct."

*Id*. at *42.  Therefore, "the chain of causation was broken and the intervening cause served to cut

off [the bank's] liability."  *Id*.

The same result was reached in *Ryan v. Hunton & Williams*, where a plaintiff contended that a bank proximately caused an investor's loss in a Ponzi scheme by making a false representation about the crooked company's bank account. Notwithstanding that the plaintiff alleged that the bank suspected the account was used for fraudulent purposes, the court dismissed the complaint, finding that the direct and proximate cause of the loss was the perpetrator of the Ponzi scheme, not the bank. *Ryan v. Hunton & Williams,* 2000 Dist. LEXIS 13750, *14 (E.D.N.Y. Sept. 20, 2000).

Bernie Madoff – an intervening tortfeasor if there ever was one – shatters any causal link here. "[A]n intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about." *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004); *Restatement (Second) of Torts* § 440 (same); *see also Zahrey v. City of New York*, 2009 U.S. Dist. LEXIS 31893, *17 (S.D.N.Y. April 14, 2009) (finding that "an act that was independent of Defendants' conduct and unforeseeable in the normal course of events – breaks the chain of causation" (quotations omitted)); *Doe v. British Univs. N. Am. Club*, 788 F. Supp. 1286, 1295 (D. Conn. 1992) ("actual notice of the particular risk is required to establish proximate cause between the negligence of a defendant and the harm inflicted by the intentional conduct of a third party"); *Kavanaugh v. Nussbaum*, 71 N.Y.2d 535, 542 (1988) ("A physician who designates another doctor to 'cover' for him, in the circumstances presented, is not liable for the covering doctor's own negligence in treating the regular physician's patient.").

In sum, given the extremely limited scope of Jaffe's conduct, and its attenuated connection to the damage done by Madoff's epic fraud, proximate cause does not exist.

## CONCLUSION

As this Court well knows, times of great passion can lead regulators to overreach, sometimes to defend their reputations and sometimes their very existence. Robert Jaffe requests simply that the Court not excuse the SEC from the pleading standards of Rules 8 and 9(b). This complaint is "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. Worse, the SEC's disdain for Rule 9(b) has already damaged Jaffe's reputation through "improvident charges of wrongdoing," *O'Brien*, 936 F.2d at 676 (quotation omitted). Robert Jaffe respectfully requests that the Court dismiss the fraud claims in the Complaint, claims One through Four.

Dated: New York, NY
      August 21, 2009

ARKIN KAPLAN RICE LLP


By: */s/ Stanley S. Arkin*
      Stanley S. Arkin (# 1373)
      Howard J. Kaplan (# 4492)
      Peter B. Pope (# 4626)
      David M. Pohl (# 8609)
    590 Madison Avenue
    New York, NY  10022
    (212) 333-0226 Telephone

*Attorneys for Defendant Robert M. Jaffe*